## UNITED STATES BANKRUPTCY COURT
### EASTERN DISTRICT OF KENTUCKY
### LEXINGTON DIVISION

IN RE:

**DWAYNE S. WELLS**
**ANNA M. WELLS**                                                     **CASE NO. 20-50116**

**DEBTORS**


**MARK T. MILLER, TRUSTEE**                                          **PLAINTIFF**

**V.**                                                               **ADV. NO. 20-5008**

**DWAYNE S. WELLS**
**ANNA M. WELLS**
**UNIVERSITY OF KENTUCKY**
**FEDERAL CREDIT UNION**                                             **DEFENDANTS**


## MEMORANDUM OPINION AND ORDER GRANTING MOTIONS FOR SUMMARY JUDGMENT IN PART

The parties filed cross-motions for summary judgment and responses. [ECF Nos. 14, 16, 17, 26, 27.]  The Plaintiff is Mark Miller, the Chapter 7 Trustee. The Defendant University of Kentucky Federal Credit Union ("UKFCU") is the maker of two secured loans involving the other Defendants, the husband and wife Debtors.  Arguments were heard on June 18, 2020, and the motions were taken under submission.

The Plaintiff is entitled to summary judgment on his argument that the first mortgage lien is not enforceable against the Debtor Dwayne S. Wells, so summary judgment on UKFCU's first counterclaim is denied.  The Trustee concedes the second mortgage is effective, so UKFCU is entitled to summary judgment on its second counterclaim.  Other matters require more consideration.

## I.      FACTUAL AND PROCEDURAL HISTORY.

The facts in this case are undisputed.  The Debtors purchased a single-family home located at 591 Merrimac Drive (a/k/a 3433 Birkenhead Drive), Lexington, Kentucky (the "Property"), on July 21, 2005.  [ECF No. 1 at 5.]  On February 14, 2014, the Debtor Anna M. Wells obtained a $134,500.00 loan evidenced by a note payable to UKFCU.  [ECF No. 9-1, Ex. A (the "Note").]  The Note is secured by a first mortgage of the same date that pledges an interest in the Property.  [ECF No. 9-2, Ex. B (the "Mortgage").]

The Mortgage is of record in the Office of the Fayette County Clerk.  The Mortgage document is a national form that was created, at least in part, to facilitate the packaging and sale of mortgage loans as securities.  The Mortgage provides immediately before Paragraph 1: "*THIS SECURITY INSTRUMENT* combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property." [*Id.* at 4.]  The Mortgage is governed by Kentucky law. [*Id.* at 13, ¶ 16.]

The Mortgage defines Anna as the "Borrower," which is the term for the mortgagor under the agreement.  The term "Borrower" is used throughout the Mortgage to impose the typical obligations in a mortgage instrument, including the pledge of the lien on the Property.  Dwayne is not named or identified as a "Borrower" or mortgagor anywhere in the Mortgage.  Dwayne signed the Mortgage by initialing each page and signing his name on the last page.  A copy of the signature page for the Mortgage is Attachment 1 to this Opinion.

The Trustee acknowledges Anna's liability under the Mortgage.  The Trustee's complaint and summary judgment motion allege the omission of Dwayne from the covenants means the Mortgage is not enforceable as to Dwayne.  [ECF Nos. 1, 14.]  Therefore, the Trustee claims he

may avoid the Mortgage lien for the benefit of the estate.  *See* 11 U.S.C. §§ 544(a), 551.  The

Trustee also asks for authority to sell the Property to monetize this interest.  11 U.S.C. § 363(b),

(f), and (h).

UKFCU maintains there are sufficient indicia of Dwayne's role as a "Borrower" to

uphold the validity of the Mortgage and counterclaims for judgment against both Debtors.  [ECF

Nos. 9, 16, 17, 26, 27.]  UKFCU also wants the Trustee to abandon the property to allow the

Debtors to reaffirm their obligations under the Note and Mortgage.  [*Id*.]

UKFCU filed another counterclaim to determine the validity of a second mortgage lien

that secures a line of credit obtained by the Borrowers from UKFCU on June 16, 2017 (the

"Second Mortgage").  [*See* ECF Nos. 9-3, Ex. C, 9-4, Ex. D.]  The Trustee concedes the Second

Mortgage is properly perfected against both Debtors, so summary judgment is granted on this

counterclaim.

 The Debtors filed a response that discloses their desire to remain in their home.  [ECF

No. 25.]  The Debtors also challenge any request for legal fees because UKFCU caused the

problems that resulted in this adversary proceeding.  [*Id.*]

## II.    JURISDICTION AND SUMMARY JUDGMENT STANDARD.

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b).  It is a core

proceeding pursuant to 28 U.S.C. § 157(b)(2)(K).

Civil Rule 56 allows entry of summary judgment if the moving party shows there are no

genuine issues of material fact and the movant is entitled to a judgment as a matter of law.  FED.

R. CIV. P. 56(a) (made applicable by FED. R. BANK. P. 7056).  A fact is material if it would affect

the outcome of the dispute under applicable law.  *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242,

251-252 (1986) (After assessing the proof, the determinative issue is "whether the evidence

presents a sufficient disagreement to require submission to [the trier of fact] of whether it is so

one-sided that one party must prevail as a matter of law.").  A court must assume all inferences

from the facts in favor of the non-moving party.  *Matsushita Elec. Indus. Co., LTD v. Zenith*

*Radio Corp.*, 475 U.S. 574, 587 (1986).

## III.    DISCUSSION.

This case requires an interpretation of the Mortgage, a national form.  Use of a form

document has the benefit of uniformity, but also contains deviations from the norm.  The party

that pledges real property in Kentucky is generally referred to as a mortgagor.  The national form

calls the mortgagor a "Borrower," a term generally used for the maker of a loan.  [*See* ECF No.

9-1, Ex. A (Anna is defined as the "Borrower" under the Note).]  Also, the national form refers

to multiple mortgagors by the singular term "Borrower."

The use of the national form also means this is not the first-time lenders have tried to fix

a drafting error through the courts.  *See, e.g., Rogan v. Fifth Third Mortg. Co. (In re Rowe)*, 452

B.R. 591 (B.A.P. 6th Cir. 2011); *Gilchrist v. United Bank & Trust Co.* (*In re Gilchrist*), 467 B.R.

114 (E.D. Ky. 2012); *Johnson v. BAC Home Loans Servicing, L.P. (In re Crouch)*, Bankr. No.

09-52931, Adv. No. 10-5006, 2010 WL 2667393 (Bankr. E.D. Ky. June 30, 2010), *aff'd sub*

*nom., BAC Home Loans Servicing, L.P. v. Johnson (In re Crouch)*, Civil Action No. 5:10-332-

JMH, Bankr. No. 09-52931, 2011 WL 3608095 (E.D. Ky. Aug. 16, 2011).  The cases start with

the same general set of facts:  the lender made a mistake filling out the national form mortgage

and needs to rely on nuances in the contract to support its validity and prevent lien avoidance by

a bankruptcy trustee.  Sometimes that is possible, but in other cases, like this one, the court must

follow the law of the forum to deny the validity of the mortgage.

A.  **The Mortgage Is Not Enforceable Against Dwayne.**

1.  **The Mortgage Is Not Ambiguous.**

The Mortgage is interpreted according to Kentucky law.  *See Rogan v. Bank One, N.A. (In re Cook)*, 457 F.3d 561, 566 (6th Cir. 2006).  Kentucky courts first attempt to determine the agreement of the parties based on the terms of the contract. *See Veech v. Deposit Bank of Shelbyville*, 128 S.W.2d 907, 911 (Ky. 1939) ("A primary and fundamental rule in the interpretation of a contract is to ascertain if possible the intention of the parties from its terms, taking into consideration the entire context of the agreement and to give to it such construction as will carry out that intention."); *see also City of Louisa v. Newland,* 705 S.W.2d 916, 919 (Ky. 1986) (a court should give effect to all parts and every word if possible).  If the intent is not gleaned from the entire agreement, resort to parol evidence is appropriate.  *L.K. Comstock & Co., Inc. v. Becon Const. Co.*, 932 F. Supp. 948, 964 (E.D. Ky. 1994), *aff'd sub nom. L.K. Comstock & Co., Inc. v. Becon Const. Co., Inc.*, 73 F.3d 362 (6th Cir. 1995).

The text of the Mortgage is not ambiguous.  The terms are easy to read with only Anna as the mortgagor and each reference to "Borrower" does not need Dwayne to make it work.  This is particularly true for the granting language, which only comes from the defined Borrower, Anna. [ECF No. 9-2, Ex. B at 3.]  Further, some paragraphs make sense only when the Borrower is a maker of the related note or the Borrower fits the definition of a co-signer.  [*See* ECF No. 9-2, Ex. B (¶ 1, payment obligation; ¶ 2, escrow obligations; ¶ 8, loan application; ¶ 10, mortgage insurance obligations; ¶ 14, fees; ¶ 17, only one copy of documents to Borrower); *see also infra* at Part III.A.3.b.ii (if a co-signer was properly identified, these paragraphs would make sense).]

The only possible ambiguity arises because Dwayne placed his signature and initials on the Mortgage.  *See Rhiel v. Bank of New York Mellon (In re Perry)*, 600 B.R. 584, 592 (B.A.P.

6th Cir. 2019) (upholding a decision that these facts could create an ambiguity under Ohio law). But Kentucky law provides an answer without resort to parol evidence. "[A] mortgage signed and acknowledged by a person not named or sufficiently identified in the body of the mortgage is ineffective and does not create a valid lien against the person's land." *Rowe*, 452 B.R. at 595-96; *see also infra* at Part III.A.2 (discussing this concept in detail).

This decision interprets the contract as drafted by UKFCU and upholds Kentucky law. There is no ambiguity or need to resort to parol evidence.

**2.    Dwayne Is Not Identified as a "Borrower" (*i.e.* Mortgagor) in the Mortgage.**

UKFCU made a mistake; it only defined the "Borrower" as Anna. The Mortgage does not explain why Dwayne executed the contract. Therefore, every time "Borrower" is used in the Mortgage covenants, the definition tells the reader that only Anna makes the promises. The failure to impose any covenants against Dwayne in the terms of the contract means it is not effective against him.

Citing cases going back to 1869, Kentucky's highest court provided: "It is the law of this state that a deed, and for the same reason a mortgage, is not valid as to one who is not named or identified in some way as grantor or mortgagor, although he may sign and acknowledge the instrument." *Goodrum's Guardian v. Kelsey*, 50 S.W.2d 932, 934 (Ky. 1932). Therefore, the Mortgage "is ineffective and does not create a valid lien against" Dwayne's interest in the Property. *Rowe,* 452 B.R. at 595-96. In 2011, the United States District Court for the Eastern District of Kentucky held, "Kentucky law is well-settled on this issue, and the Court sees no basis to depart from precedent here." *Johnson*, 2011 WL 3608095 at *3; *see also infra* at Part III.B.3.b.iii (discussing the impact of the *Johnson* decision).

This case is simply the application of a principal established long ago by Kentucky courts. *See id.; see also Rowe v. Bird*, 304 S.W.2d 775, 777–78 (Ky. 1957) ("A conveyance signed and acknowledged by a person, not named in the body of the instrument as a grantor, is ineffectual and passes no title as to that person."); *Whitaker v. Langdon*, 195 S.W.2d 285, 287 (Ky. 1946) ("It is fundamentally necessary that a conveyance should use the specific names of its grantors in the body of the instrument in order to pass valid title out of such grantors.").

### 3.   The Other Terms in the Mortgage Do Not Identify Dwayne as "Borrower."

### a.   There Are No Riders That Identify Dwayne as "Borrower."

UKFCU accepts the general rule that a mortgage must explain the capacity in which a person signs the instrument, but argues the Mortgage has sufficient information pointing to Dwayne as a "Borrower" despite its mistake.  UKFCU initially relies on a decision from the Sixth Circuit Bankruptcy Appellate Panel interpreting the national form mortgage.  *Rowe*, 452 B.R. 591.

The national form mortgage in *Rowe* identified the debtor husband as the "Borrower" and indicated he was a married man.  *Rowe*, 452 B.R. at 594.  The debtor wife, a co-owner of the collateral, was not defined as "Borrower," but she did sign the mortgage immediately after a reference to the term "Security Instrument."  "Security Instrument" was defined as the mortgage *and* any rider.  *Id.*

Both the Borrower in *Rowe* and his co-owner spouse executed a rider at the same time as the mortgage and the rider clearly identified both as "Borrower(s)."  *Id.*  Further, the rider was attached to, incorporated in, and recorded with, the mortgage. *See id.*; *see also* Memorandum in Support of Motion for Summary Judgment at 22-23, *Rogan v. Fifth Third Mortgage Co. (In re Rowe)*, AP No. 10-05031 (Bankr. E.D. Ky. June 10, 2010), ECF No. 13-1.  Therefore, the co-

7

owner spouse knew she was a "Borrower," and it was possible to read the term "Borrower" each time it was used in the body of the mortgage to include both spouses.

Reliance on a rider to identify Dwayne as a "Borrower" is not applicable in this case. There is no rider to incorporate into the Mortgage to explain Dwayne's alleged role as a "Borrower" in the pledge of the lien and other covenants.

### b.  *Gilchrist* Does Not Apply on These Facts.

UKFCU also relies on *Gilchrist*, 467 B.R. 114, which has many facts consistent with this case, including the absence of a rider.  [ECF Nos. 26, 27.]  In *Gilchrist*, the Eastern District of Kentucky Bankruptcy Court found a mortgage ineffective against the unidentified co-owner spouse in a § 522(f) analysis.  467 B.R. at 116.  The District Court overturned the decision, relying on several factors to determine the co-owner spouse was sufficiently identified to impose liability.  *Id.* at 116-17.  These factors do not apply for the reasons that follow, so *Gilchrist* does not control this decision.

### i.   The Signature Line Does Not Identify Dwayne as "Borrower."

The signature line for the mortgage in *Gilchrist* specifically identified the co-owner spouse as a "Borrower."  *Id.* at 115.  The signature line in *Rowe* is the same.  *Rowe*, 452 B.R. at 594.  The signature lines in *Gilchrist* and *Rowe* are Attachment 2 and Attachment 3 to this Opinion for comparison to Attachment 1.  For the source of the signature lines, *see* Complaint, Ex. B at 15, *Gilchrist v. United Bank & Trust Co. (In re Gilchrist)*, AP No. 10-05005 (Bankr. E.D. Ky. Jan 15, 2010), ECF No. 1-2, and Complaint with Attached Exhibits at 19, *Rogan v. Fifth Third Mortgage Co. (In re Rowe)*, AP No. 10-05031 (Bankr. E.D. Ky. March 24, 2010), ECF No. 1.

Dwayne's signature line on the Mortgage is distinctly different from those in *Gilchrist* and *Rowe*. *See id*. The signature line does not identify Dwayne as a "Borrower;" it only asks for a date. The word "Borrower" appears on the signature page of the Mortgage, but it is on a line by itself that is separated from Dwayne's signature by Anna's signature block. Further, "Borrower" is not even followed by a colon, which might suggest it applies to all of the ensuing signatures. *See Christmas Lumber Co., Inc. v. NWH Roof & Floor Truss Sys., LLC*, No. 3:19-CV-55-HBG, 2020 WL 1189927, at *5 (E.D. Tenn. Mar. 12, 2020) ("The colon at the end of the sentence signals that something else follows (i.e., a signature).").

These factors prevent a comparison to *Gilchrist*. The signature line in this case does not sufficiently identify Dwayne as a "Borrower" (*i.e.*, mortgagor), so Kentucky's long-standing rule requiring identification of the party to the contract is enforced.

### ii.  Dwayne Is Not a Co-signer, as that Term Is Used in the Mortgage.

UKFCU also attempts to fix its mistake by suggesting Dwayne is a "co-signer," as defined in Paragraph 13 of the Mortgage. But Dwayne does not fit the definition of "co-signer" unless he is a "Borrower." Paragraph 13 provides:

> **Joint and Several Liability; Co-signers; Successors and Assigns Bound**.
> Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, *any Borrower who co-signs this Security Instrument* but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender an any other Borrower can agree to extend, modify, forbear or make any other accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent."

[ECF No. 9-2, Ex. B at 12, ¶ 13 (emphasis supplied).]

Paragraph 13 applies when the Mortgage identifies multiple parties as "Borrower." If both sign the note, the first sentence says they are jointly and severally liable. But if one

identified "Borrower" does not sign the note, the second sentence indicates that person is a "co-signer" who is not obligated to pay money.  It is clear from the terms, however, that a party is not a co-signer unless the party is a "Borrower" first.

The court in *Gilchrist* decided the co-owner spouse was a co-signer based on an identical paragraph.  *Gilchrist*, 467 B.R. at 117.  As already explained, however, the co-owner spouse in *Gilchrist* was identified by the signature line as a "Borrower."  This allowed the court to treat the co-owner spouse as a "Borrower" in the second sentence of Paragraph 13.  Nothing exists in this case that allows a conclusion that Dwayne is a "Borrower," so he is not a "co-signer" pursuant to the definition in Paragraph 13.

### iii.  The Decision in *Gilchrist* Does Not Adequately Distinguish *Johnson*.

The year before *Gilchrist* was decided, the Eastern District of Kentucky upheld a Bankruptcy Court decision finding the national form mortgage unenforceable on similar facts. *See BAC Home Loans Servicing., L.P. v. Johnson (In re Crouch)*, 2011 WL 3608095, at *4-5 (E.D. Ky. Aug. 16, 2011).  The signature line and Paragraph 13 of the mortgage were identical in the *Johnson* and *Gilchrist* mortgages. The signature line for the mortgage in *Johnson* is attached to this Opinion as <u>Attachment 4</u> for comparison. *See* Complaint with Attached Exhibits at 20, *Johnson v. BAC Home Loans Servicing, L.P. (In re Crouch)*, AP No. 10-05006 (Bankr. E.D. Ky. Jan 15, 2010), ECF No. 1.

The District Court held in *Johnson*: "Mrs. Crouch was not sufficiently identified as a Borrower in any way in the granting clause or in the body of the mortgage. While she was referred to in some way, the identification was not sufficient under Kentucky law." *Johnson*, 2011 WL 3608095, at *4.  The only difference with this case is Mrs. Crouch did not initial each

page. An initial, like a signature, cannot imply an agreement to pledge an interest in property

without some identification of the person as a grantor in the document.

The court in *Gilchrist* provided the following justification for disregarding *Johnson*:

> The facts in *Johnson* are indeed quite similar to those in the present case, except
> that in *Johnson,* the name of the co-signor is not included in the description of the
> property being mortgaged. In the present case, John Gilchrist's name is included
> in the description of the property in question in "Exhibit A," which was
> incorporated into the body of the Mortgage. This is a significant distinction.

*Gilchrist*, 467 B.R. at 117; *see also* Complaint, Ex. B at 16 ("Exhibit A" Legal Property

Description), *Gilchrist v. United Bank & Trust Co. (In re Gilchrist)*, AP No. 10-05005 (Bankr.

E.D. Ky. Jan 15, 2010), ECF No. 1-2 (included as <u>Attachment 5</u> to this Opinion for comparison).

This significant distinction is not borne out by the copy of the mortgage on record in

*Johnson*. The legal description attached to the mortgage in *Johnson* contains the following

source of title:

> FOR HISTORY OF TITLE of the above described tract of land reference is made
> to the Deed of Conveyance to Palmer Crouch and Estill Crouch, his wife from
> Opal Alexander, widow, dated June 9, 2000, of record at Deed Book 194, Page
> 211, Bath County Clerk's Office.

*Johnson*, 2011 WL 3608095 at *2; *see also* Complaint with Attached Exhibits at 21-22, *Johnson*

*v. BAC Home Loans (In re Crouch)*, AP No. 10-5006 (Bankr. E.D. Ky. Jan 15, 2010), ECF No. 1

(included as <u>Attachment 6</u> to this Opinion for comparison).[1]

A source clause on a legal description to a mortgage makes it easier to track the title

history, but the words do not contain a pledge of an interest or identify the co-owner as a

mortgagor when incorporated into the body of the document. The source clause on Exhibit A to

---

[1] The distinction focuses on the incorrect belief that the legal description in the *Johnson* mortgage omitted Mrs.
Crouch. The legal descriptions are different. John Gilchrist, the unidentified co-owner spouse, was single when he
purchased the property, so the source clause only refers to him. The Crouches were married when they acquired
their property, so they are both referenced. This might have contributed to the confusion, but it does not explain
how a legal description evidences a grant of an interest in property by any owner listed in the source clause.

the Mortgage does nothing more than say Dwayne co-owns the property.  It could only explain

Dwayne's participation if he were otherwise defined as a "Borrower" in the Mortgage.

The direction in *Johnson* to follow long-standing Kentucky precedent is followed.  Even

without the apparently mistaken distinction, the significant difference in signature lines and

failure to define Dwayne as a co-signer means *Gilchrist* is not controlling.

### 4.  UKFCU Must Suffer the Consequences of Its Drafting Error.

It is better to protect long-standing Kentucky law as the District Court did in *Johnson*

than try to fix an easily preventable mistake by UKFCU through judicial fiat.  If a lender wants

to use a form, then it must complete the form properly.  This issue would not exist if UKFCU, as

drafter, had simply identified Dwayne as a "Borrower."  And mistakes are generally construed

against the drafter.  *See L.K. Comstock & Co., Inc.*, 932 F. Supp. at 968; *D.L. Walker & Co. v.

Lewis*, 101 S.W.2d 685 (Ky. 1937); *Mammoth Cave Nat. Park Assn. v. Whittle & Demunbrum*,

70 S.W.2d 990 (Ky. 1934).

### B.  The Other Matters Will Require Further Consideration.

The Mortgage is not enforceable against Dwayne's interest in the Property.  Therefore,

the Trustee may avoid the lien.  11 U.S.C. § 544(a).

The Trustee also requests an order preserving the lien for the benefit of the estate and the

right to sell the Property.  11 U.S.C. §§ 363(h) and 551.  UKFCU disputed the Trustee's request

for a sale order, but the arguments were primarily made with the expectation this decision would

forgive its drafting error.  At this point, the record is not sufficient to conclude a sale should

occur, so a status conference is set to consider the best way forward.

Also, the Debtors have expressed an interest in a resolution that would allow them to

remain in their home.  Trustees, lenders, and debtors have often reached agreements in similar

situations, so the parties in this case can investigate a resolution before the status conference.

## IV.    CONCLUSION.

This decision interprets the Mortgage according to long-standing Kentucky precedent. The cases that ignored a similar error did so because other parts of the contract identified the role of the co-owner spouse as a mortgagor.  But those cases do not eliminate the need to identify a mortgagor as a grantor in the body of the agreement.  The Mortgage does not sufficiently identify Dwayne as a mortgagor of the Property and is not enforceable against his interest in the Property.

Therefore, it is ORDERED that the Trustee's motion for summary judgment on this issue is GRANTED [ECF No. 14] and UKFCU's request for summary judgment on its first counterclaim is DENIED [ECF No. 16].  The validity of the Second Mortgage against both Debtors is admitted, so UKFCU's request for summary judgment on its second counterclaim is GRANTED [ECF No. 16.]

A decision is reserved on all other matters pending a status conference to consider the best way to resolve this proceeding.

13

---

**The affixing of this Court's electronic seal below is proof this document has been signed by the Judge and electronically entered by the Clerk in the official record of this case.**



**Signed By:**
*Gregory R. Schaaf*
**Bankruptcy Judge**
**Dated: Tuesday, June 30, 2020**
**(grs)**

## **Attachment 1**

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Borrower

_____  2/14/14
ANNA M. WELLS                    Date
                                 (Seal)

_____  2-14-14
DWAYNE S. WELLS                  Date
                                 (Seal)

_____
                                 Date
                                 (Seal)

_____
                                 Date
                                 (Seal)

☐ Refer to the attached *Signature Addendum* for additional parties and signatures.

KENTUCKY - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP ®
Wolters Kluwer Financial Services

Form 3018 1/01 (rev. 12/10)
VMP80(KY) (1302).00
Page 17 of 18

## **Attachment 2**

GARRARD COUNTY
**M266** PG 936

DOC ID #: 00015104626609006

**BY SIGNING BELOW,** Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Mary Gilchrist _____ (Seal)
MARY GILCHRIST                                      -Borrower

John Gilchrist _____ (Seal)
                                                    -Borrower

_____ (Seal)
                                                    -Borrower

_____ (Seal)
                                                    -Borrower

**STATE OF KENTUCKY,** GARRARD County ss:

The foregoing instrument was acknowledged before me this 29th day of September
by MARY + JOHN GILCHRIST

_____

known to me (or satisfactorily proven) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged that he/she (they) executed the same for the purposes therein contained.

My Commission Expires:

11/21/2001                                          Notary Public

**Attachment 3**

Book 306  Page 379  Printed by lincoln_____

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses

_____     _____ (Seal)
Sandra O'Connor                  Boyd W. Rowe               -Borrower

                                 _____ (Seal)
                                 Linda L. Rowe               -Borrower

_____ (Seal)   _____ (Seal)
                -Borrower                         -Borrower

_____ (Seal)   _____ (Seal)
                -Borrower                         -Borrower

_____ (Seal)   _____ (Seal)
                -Borrower                         -Borrower

401549191                                     401549191

-6D(KY) (0401)          Page 14 of 15       Form 3018  1/01 (rev. 10/01)

**<u>Attachment 4</u>**

DOC ID #:

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____    *Palmer Crauch*    (Seal)
                             PALMER CROUCH       -Borrower

_____    *Estl M. Crouch*    (Seal)
                                                 -Borrower

                             _____    (Seal)
                                                           -Borrower

                             _____    (Seal)
                                                           -Borrower

STATE OF KENTUCKY,                        County ss: Bath

The foregoing instrument was acknowledged before me this 30th day of August, 2002 .
by Palmer Crouch And Estl M. Crouch, his w. p

My Commission Expires: March 19, 2006    Leslie G. Clemons
                                         Notary Public

-6A(KY) (0106).01    CHL (02/02)    Page 16 of 16    Initials: _____    Form 3019 1/01 (Rev. 10/01)

**Attachment 5**

File No.: 6-1655

# "EXHIBIT A"

GARRARD COUNTY
**M266**  **PG 937**

Being all of Lot 11, Rocky Fork Estates, consisting of 1.03 acres, more or less, located and being the Buena Vista Section of Garrard County, Kentucky, and being more particularly describes in Plat Cabinet 1, Slide 203, in the Garrard County Clerk's Office, to which plat reference is hereby made for a more particular description.

Being the same property acquired by John I. Gilchrist, a single person, by deed dated July 7, 1995, of record in Deed Book 170, Page 625 in the Office of the Clerk of Garrard County, Kentucky.

DOCUMENT NO:     78001
RECORDED ON: DECEMBER 06,2006 12:00:10PM
TOTAL FEES:     $55.00
COUNTY CLERK: STACY MAY
COUNTY:     GARRARD COUNTY
DEPUTY CLERK: SHARON ANN CAUDILL
BOOK M266     PAGES 922 - 937

**<u>Attachment 6</u>**

Prepared by: T. FREDERICK

**AMERICA'S WHOLESALE LENDER**
BRANCH 8781
100 MALLARD CREEK ROAD
LOUISVILLE, KY 40207-
(502)893-3835
Br Fax No.: (502)893-4483

DATE:      08/30/2002
CASE #:
DOC ID #:    1
BORROWER: PALMER CROUCH
PROPERTY ADDRESS: 114 E MAIN ST
                 OWINGSVILLE, KY. 40360

### LEGAL DESCRIPTION EXHIBIT A

FHA/VA/CONV
Legal Description Exhibit A
1C6041XX (11/01)





*P C*

PROPERTY DESCRIPTION FOR
PALMER CROUCH AND ESTILL CROUCH, HIS WIFE

A certain parcel of land with residence thereon lying and being in the City of
Owingsville, Bath County, Kentucky on the North side of East Main Street and the West
side of Suddith street and being more particularly bounded and described as follows, to-
wit:

BOUNDED on the South by East Main Street; on the East by Suddith Street; on the
North by property formerly belonging to James M. Richards and later under lease to John
Williamson and fronting 100 feet on Suddith Street and used as a filling station and on
the West by property formerly belonging to Emma Barnes and being the residence and
part of the lot formerly owned as a residence by James Gillon, now deceased.

### EXCEPTION

THERE IS EXCEPTED AND EXCLUDED from the above described land and not
conveyed hereby a parcel of land conveyed to Archie Stone by deed from Mattie
Rawlings, single, dated June 17, 1953, of record at Deed Book 113, Page 139, Bath
County Clerk's Office and which said excepted parcel is more specifically described as
follows, to-wit:

BEGINNING at a stake in the line between the property of John Williamson and the
property hereby conveyed said stake being set against the curb on the West side of
Suddith Street; thence running South with the West curb of Suddith Street a distance of
83 feet to a stake; thence running West a straight line a distance of 60 feet to a stake set in
the fence in the line of Mrs. Emma Barnes; thence running with said fence and the said
Barnes line North 83 feet to the line of Williamson; thence East with the line of John
Williamson 60 feet to the point of beginning.

FOR HISTORY OF TITLE of the above described tract of land reference is made to the
Deed of Conveyance to Palmer Crouch and Estill Crouch, his wife from Opal Alexander,
widow, dated June 9, 2000, of record at Deed Book 194, Page 211, Bath County Clerk's
Office.

STATE OF KENTUCKY
COUNTY OF BATH
This instrument was filed for a record this 5
day of _____ 20 02
at 2:11 o'clock P M and recorded in
MB 128

_____ Bath Co. Clerk
Per _____ D.C.

SEP 5 '02 MB 211